**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| CHRISTOPHER THURMOND, KATHY MULL, DIANE FORREST and JEANNE RYAN, individually and on behalf of all others similarly situated, | : : : : : | |
| Plaintiffs, | : : : | |
| v. | : : | CIVIL ACTION NO. 2-11-CV-01352-CDJ |
| SUNTRUST BANKS, INC., SUNTRUST BANK, SUNTRUST MORTGAGE, INC., TWIN RIVERS INSURANCE COMPANY, | : : : : | |
| Defendants. | : : | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants SunTrust Banks, Inc., SunTrust Bank, SunTrust Mortgage, Inc. and Twin Rivers Insurance Company (collectively, "Defendants"), by and through their undersigned attorneys, pursuant to Rule 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure, hereby move to dismiss Plaintiffs' Complaint with prejudice. In support of this Motion, Defendants rely upon the accompanying memorandum of law.

Respectfully submitted,

Date: May 2, 2011

/s/ Maura E. McKenna
Martin C, Bryce, Jr., Esq. (PA 59409)
Maura E. McKenna, Esq. (PA 202940)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103-7599
(215) 864-8238 (Telephone)
(215) 864-9511 (Fax)

Attorneys for Defendants SunTrust Banks,
Inc., SunTrust Bank, SunTrust Mortgage,
Inc. and Twin Rivers Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May, 2011,  I have caused a true

and correct copy of the foregoing Motion to Dismiss and accompanying Memorandum of

Law to be served on the following counsel via ECF:

Joseph H. Meltzer, Esq.
Edward W. Ciolko, Esq.
Terence S. Ziegler, Esq.
Joshua C. Schumacher, Esq.
Michelle A. Coccagna, Esq.
BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087

Steven A. Skalet
Janell M. Byrd
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, N.W.
Suite 300
Washington, D.C. 20036

Margaret Caroline Lindsey
Todd Allen Jones
1305 Navaho Drive
Suite 303
Raleigh, N.C. 27609

Attorneys for plaintiffs


/s/ Maura E. McKenna
Maura E. McKenna

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| CHRISTOPHER THURMOND, KATHY MULL, DIANE FORREST and JEANNE RYAN, individually and on behalf of all others similarly situated, | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | CIVIL ACTION NO. 2-11-CV-01352-CDJ |
| SUNTRUST BANKS, INC., SUNTRUST BANK, SUNTRUST MORTGAGE, INC., TWIN RIVERS INSURANCE COMPANY, | : : : : | |
| Defendants. | : : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants SunTrust Banks, Inc., SunTrust Bank, SunTrust Mortgage, Inc. ("SunTrust Mortgage") and Twin Rivers Insurance Company ("Twin Rivers") (collectively, "Defendants")[1], by and through their undersigned attorneys, hereby submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Complaint.

## I.    INTRODUCTION

Plaintiffs all obtained mortgage loans from SunTrust Mortgage in 2007 and 2008 and were required to pay for private mortgage insurance ("PMI") because their

---

[1]    Plaintiffs refer to SunTrust Banks, Inc., SunTrust Bank and SunTrust Mortgage collectively as "SunTrust."  As argued in Section IV.C, *infra*, Plaintiffs have not alleged facts sufficient to pierce the corporate veil and impose liability upon SunTrust Banks, Inc. and SunTrust Bank in this matter, as SunTrust Mortgage was the lender for each of Plaintiffs' loans.  For purposes of this Memorandum, where it is necessary to accurately relay Plaintiffs' allegations, Defendants will employ the term, "SunTrust."

down payments totaled less than 20% of the purchase price of their homes.  Third-party mortgage insurers provided the PMI for the loans, while Twin Rivers reinsured a portion of the PMI.   This arrangement was disclosed to each Plaintiff in his or her loan documents.  Nevertheless, Plaintiffs allege that Defendants violated the Real Estate Settlement Procedures Act of 1974 ("RESPA") contending that Twin Rivers accepted kickbacks or illegal referral fees from the third-party mortgage insurers.  In support of this claim, Plaintiffs allege that Twin Rivers did not assume risk commensurate with the premiums it received from the mortgage insurers and that the premiums exceeded the value of any services rendered therefor.  Plaintiffs further allege that defendants SunTrust Banks, Inc. and SunTrust Bank somehow received a portion of these premiums. Plaintiffs' claims should be dismissed as a matter of law.

Plaintiffs bring this action nearly four years after the one-year statute of limitations governing their RESPA claim has run.  Three of the Plaintiffs obtained their loans in 2007, while the remaining Plaintiff obtained her loan in mid-2008.  Plaintiffs attempt to circumvent this fact by asserting equitable tolling, even though the facts as they are averred in Plaintiffs' Complaint clearly demonstrate that none of the elements of the Third Circuit standard for equitable tolling can be satisfied in this case.

In addition, Plaintiffs have also failed to make out a claim for unjust enrichment, since the relationship between the parties is strictly and explicitly governed by contract.

Plaintiffs fail to allege anything more than the barest conclusory allegations against SunTrust Banks, Inc. and SunTrust Bank, which is insufficient to pierce the corporate veil.  Moreover, Plaintiffs have failed to join an indispensable party,

DMEAST #13630976 v5

as Christopher Thurmond's spouse is a co-obligor on his loan.  For all of these reasons,
Plaintiffs' Complaint should be dismissed.

## II.      RELEVANT FACTS[2]

Plaintiff Christopher Thurmond ("Thurmond") obtained a mortgage loan
from SunTrust Mortgage on May 16, 2007 for the purchase of a home in Philadelphia,
Pennsylvania.  Compl. ¶ 11.  Thurmond was required to pay PMI in connection with the
loan.  *Id.*  The PMI provider was selected by SunTrust and was a provider with whom
SunTrust had a captive reinsurance arrangement.  *Id.*  Thurmond paid a PMI premium of
$203.00 per month.  *Id.*

Plaintiff Kathy Mull ("Mull") obtained a mortgage loan from SunTrust
Mortgage on May 7, 2008 for the purchase of her home in Hummelstown, Pennsylvania.
Compl. ¶ 12.  Mull was required to pay PMI in connection with the loan.  *Id.*  The PMI
provider was selected by SunTrust and was a provider with whom SunTrust had a captive
reinsurance arrangement.  *Id.*  The premium for the PMI was $1,579.44 and was paid as a
lump sum by SunTrust and then passed on to Mull in the form of a higher interest rate on
her loan. *Id.*

Plaintiff Jeanne Ryan ("Ryan") obtained a mortgage loan from SunTrust
Mortgage on May 3, 2007 for the purchase of a home in Ligonier, Pennsylvania.  Compl.
¶ 13.  Ryan was required to pay PMI in connection with the loan.  *Id.*  The PMI provider
was selected by SunTrust and was a provider with whom SunTrust had a captive
reinsurance arrangement.  *Id.*  Ryan paid a PMI premium of $139.50 per month.  *Id.*

---

[2]      For purposes of this Motion to Dismiss only, Defendants accept all well-pleaded
facts as true.

Plaintiff Diane Forrest ("Forrest") obtained a mortgage loan from SunTrust Mortgage on February 27, 2007 for the purchase of a home in Washington, D.C.  Compl. ¶ 14.  Forrest was required to pay PMI in connection with the loan.  *Id.*  The PMI provider was selected by SunTrust and was a provider with whom SunTrust had a captive reinsurance arrangement.  *Id.*  Forrest paid a PMI premium of $115.00 per month.  *Id.*

Plaintiffs allege that "SunTrust" entered into captive reinsurance arrangements with Plaintiffs' PMI providers, wherein "SunTrust" referred borrowers to private mortgage insurers, who in turn agreed to purchase reinsurance from Twin Rivers under excess of loss agreements.[3]  Compl. ¶ 60.  Plaintiffs claim that, under the reinsurance agreements, the private mortgage insurers paid Twin Rivers a percentage of the premiums paid by borrowers in a particular pool of loans.  In exchange, Twin Rivers agreed to assume a portion of the risk with relation to that pool of loans.  *Id.* ¶ 63.  Plaintiffs contend, however, that little or no risk actually was transferred from the primary insurer to Twin Rivers, and that, consequently, the reinsurance was not valid.  *Id.* ¶ 64, 71.  Plaintiffs allege the captive reinsurance arrangement was a sham and Twin Rivers, in fact, received a kickback.  *Id.*

Plaintiffs' Mortgages each disclosed the possibility that, as a part of the mortgage insurer's process of mitigating its risk, a SunTrust affiliate could receive a portion of Plaintiffs' PMI payments in exchange for sharing or modifying the mortgage insurer's risk.  *See* Mortgages of Thurmond, Mull and Ryan and the Deed of Trust

---

[3]     Plaintiffs describe "excess of loss" reinsurance as when the reinsurer is only liable for a specified corridor of loss, with the losses below and above the band being covered by the private mortgage insurer.  Compl. ¶ 46.

(hereinafter referred to as a Mortgage) of Forrest at ¶ 10, relevant portions of which are attached hereto as Exhibits 1 through 4 respectively.[4]  Each of these Mortgages disclose that:

> Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify, their risk, or reduce losses, These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer any have available (which may include funds obtained from Mortgage Insurance premiums).

> As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the fore going, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

*See*, *e.g.*, Thurmond Mortgage at ¶ 10, Exhibit 1.

Additionally, Plaintiffs were all provided a Mortgage Guaranty Insurance Disclosure (the "Disclosure"), which explicitly described a captive reinsurance

---

[4]     As set forth in Section III, *infra*, this Court may consider, *inter alia*, matters of public record and documents upon which Plaintiffs have premised their claims, including the documents that are attached to Defendants' Motion to Dismiss. Consideration of these documents does not convert a Motion to Dismiss into a Motion for Summary Judgment.

arrangement and allowed the mortgagor to opt out of it.[5]  The Disclosure states, in

pertinent part:

> Mortgage Insurers evaluate their total risk on all MI in force and may, from time to time, enter into agreements with other parties to modify or share this risk or mitigate their losses. **One kind of arrangement is called "captive reinsurance," in which an affiliate of your mortgage lender assumes a portion of the MI risk and is paid by the mortgage insurer a portion of the premium charged for the MI on your loan.**

*See*, *e.g.*, Thurmond Disclosure, Exhibit 5 at 1 (emphasis added).  Plaintiffs all signed an

acknowledgement at the end of their Disclosures explicitly acknowledging that, unless

they opted out, they agreed that their loan could be reinsured or otherwise included in a

risk allocation agreement.  The exact language of the acknowledgement is as follows:

> I hereby acknowledge that I have received and read this Disclosure. I understand that, unless I check the box below and mail this form to the specified address, I agree that [Mortgage Insurance] covering my loan may be reinsured or included in another risk allocation arrangement, as described above, and that my lender, any subsequent holder of my loan, a reinsurer, any other third party, or any affiliate of any of the foregoing, may receive amounts that derive from (or might be characterized as) a portion of my payments for MI.

*See, e.g., id.* at 1.

Plaintiffs assert two causes of action: Violation of RESPA and Unjust

Enrichment/Disgorgement.  In support of their RESPA claim, Plaintiffs allege that

Defendants arranged for an "unlawfully excessive split" of their PMI to be paid to Twin

---

[5]      An unsigned copy of the Disclosure provided to Plaintiff Forrest was attached to Plaintiffs' Complaint as Exhibit C.  True and correct copies of the signed Disclosures of Thurmond, Mull, Ryan and Forrest are attached hereto, respectively, as Exhibits 5 through 8.

Rivers under reinsurance agreements, and that these payments constituted illegal kickbacks.  Compl. ¶ 98.

In support of their Unjust Enrichment/Disgorgement claim, Plaintiffs allege that they have conferred a substantial benefit upon Defendants – the "tens of millions of dollars" Defendants have obtained as their share of the PMI premiums paid by Plaintiffs.  *Id. ¶* 108.  Plaintiffs seek the disgorgement of the profits realized by Defendants as a result of the captive reinsurance arrangement.

Plaintiffs  also at least implicitly acknowledge that their RESPA claim is beyond the one-year statute of limitations.  In an attempt to avoid its application, the Complaint includes ten paragraphs of general allegations intended to invoke equitable tolling. *Id.* ¶¶ 112-21.  In essence, Plaintiffs argue that, despite the exercise of due diligence, they could not have discovered the underlying basis of their claims.  *Id.* ¶ 112.  Plaintiffs argue that they did not possess sufficient information or the requisite expertise in order to enable them to discover the "true nature" of Defendants' captive reinsurance arrangements.  *Id.* ¶ 113.  Plaintiffs also argue that they required the assistance of counsel to even identify their cause of action.  *Id.* ¶ 115.  Finally, Plaintiffs argue that Defendants affirmatively concealed the captive reinsurance arrangement by providing the Disclosures (Exhibits 5-8) that failed to mention Twin Rivers or disclose that the captive reinsurance arrangement was illegal.  *Id.* ¶ 118.

## III.    STANDARD ON A MOTION TO DISMISS

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court "retired" the often quoted language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that a motion to dismiss should not be granted unless "it appears beyond doubt

that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Supreme Court explained:

> *Conley's* 'no set of facts' language has been questioned, criticized and explained away long enough . . . and after puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.

*Twombly*, 127 S. Ct. at 1969. In order to defeat a motion to dismiss, a plaintiff cannot rely upon unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events. *Morse v. Lower Merion School Dist*, 132 F.3d 902, 906 (3d Cir. 1997). Indeed, the United States Supreme Court explained that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation' [within the complaint]." *Twombly*, 127 S. Ct. at 1965 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . ." *Id.*

In short, a complaint must contain direct and plausible allegations respecting all material elements necessary to sustain recovery under a viable legal theory in order to survive a motion to dismiss. *See Twombly*, 127 S. Ct. at 1969-74. Thus, the basic proposition of Fed. R. Civ. P. 12(b)(6) is that a complaint should be dismissed when, on its face, the complaint reveals no law that supports the claims, when the complaint is devoid of the facts necessary for the plaintiff to prevail under the causes of action asserted, or when the complaint itself discloses facts which necessarily defeat the

- 8 -

causes of action pled.  Accordingly, a complaint that offers nothing more than "'labels and conclusions[,] . . . a formulaic recitation of the elements of a cause of action . . . [or] naked assertion[s]' devoid of 'further factual enhancement'" does not meet this standard and must be dismissed under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 557)).

Ultimately, "[t]o determine the sufficiency of a complaint under the pleading regime established by [*Iqbal* and *Twombly*], a court must take three steps: First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 2010 WL 5071779, *4 (3d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949-50).

In resolving a motion to dismiss, the Court may consider, in addition to the complaint's allegations, exhibits attached to the complaint, matters of public record, and "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Lorah v. SunTrust Mortg., Inc.*, No. 08-0703, 2010 WL 5342738 n.2 (E.D. Pa. Dec. 17, 2010) (quoting *Beverly Enterprises, Inc. v. Trump*, 182 F.3d 183, 190 (3d Cir. 1999) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  *See also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they

may be considered by the court." (quoting 62 Fed. Proc., L.Ed. § 62:508)).

"'[C]onsidering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered.'" *Lorah* at n.2 (quoting *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004)).  Thus, "the Court may refer to documents on which the Complaint is based, those attached to the Complaint, and those referenced to in the Complaint, without triggering conversion to a Motion under Rule 56." *Harris v. Twp. of O'Hara*, 2006 WL 3231876, *5 (W.D. Pa. 2006) *aff'd*, 282 F.App'x. 172 (3d Cir. 2008).

Accordingly, this Court may consider Plaintiffs' Mortgages, which are both matters of public record and relied upon by Plaintiffs as forming the basis for their claims.  Additionally, the Court may consider the Disclosures, as a copy was attached to Plaintiffs' Complaint and Plaintiffs rely upon their Disclosures to support their equitable tolling argument.

## IV.    LEGAL ARGUMENT

Plaintiffs' RESPA claim is untimely and should be dismissed against all Defendants.  Plaintiffs' unjust enrichment claim fails for the same reasons and because the parties' relationship is governed by a written contract.

Plaintiffs have failed to allege any facts sufficient to warrant the piercing of the corporate veil requiring the dismissal of the Complaint as against SunTrust Banks, Inc. and SunTrust Bank for this additional reason.  Finally, plaintiff Christopher Thurmond must join his wife, the co-obligor on his loan, or his complaint should be dismissed.

**A.      Plaintiffs' RESPA Claim Is Barred By The Statute Of Limitations.**

The Third Circuit permits a statute of limitations defense to be raised by a motion to dismiss for failure to state a claim upon which relief can be granted. *See, e.g., Robinson v. Johnson,* 313 F.3d 128 (3d Cir. 2002). "A statute of limitations defense is an affirmative one, and in order to undergird a dismissal, must appear on the face of the complaint." *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital*, 435 F.3d 396, 400 n.14 (3d Cir. 2006). Here, it is plain on the face of the Complaint that the statute of limitations on Plaintiffs' RESPA claim has run.

RESPA requires that actions brought pursuant to 12 U.S.C. § 2607 be asserted within one year "from the date of the occurrence of the violation." *See* 12 U.S.C. § 2614. Accordingly, when a payment or charge is challenged under section 2607, the statute of limitations runs from the date of the closing. *See, e.g.*, *Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 361 (5th Cir. 2003) ("we create a simple and workable rule for the application of § 2614 by interpreting the phrase 'the date of the occurrence of the violation' as the date of the closing, which is a definite and indisputable date known to potential plaintiffs and defendants"); *Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-00843, 2010 WL 3769091 *3 (E.D. Pa. Sept. 27, 2010) (granting motion to dismiss on § 2607 action because "[s]ection 2607 provides a prohibition against kickbacks and unearned fees . . . . To raise a private cause of action pursuant to 2607 challenging unearned fees, a plaintiff must file a lawsuit within one year of 'the date of the occurrence of the violation.' The date of the violation is the date of closing." (citing *Morilus v. Countrywide Home Loans, Inc.*, 651 F.Supp.2d 292, 306 (E.D. Pa 2008) (statute required an action for kickbacks to be brought within one year of the date of the occurrence of the violation, which was the date of the closing)).

- 11 -

Here, Plaintiffs explicitly acknowledge that the statute of limitations has run on any claim that could be asserted by them, since Plaintiffs plead on the face of their Complaint that the latest any Plaintiff entered into their mortgage loan was May 7, 2008. Compl ¶¶ 11-14.  Because Plaintiffs filed their Complaint on February 25, 2011, the earliest date of the occurrence of a violation of RESPA that could be asserted by a plaintiff would be based upon a closing date of February 25, 2010.  As Plaintiffs themselves plead, this is an impossibility.

Instead, Plaintiffs attempt to argue that equitable tolling applies in this matter.  Plaintiffs' attempt to establish a basis for equitably tolling the statute of limitations, however,  is unavailing as a matter of law.  To invoke the equitable tolling doctrine, Plaintiffs have the burden of specifically pleading three necessary elements:  (1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts.  *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 509 (3d Cir. 2006), *cert. denied*, 127 S. Ct. 1267 (2007); *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1178-79 (3d Cir. 1993) *cert. denied*, *Bessemer & Lake Erie R. Co. v. Wheeling-Pittsburg Steel Co.*, 114 S. Ct. 921 (1994); *Christopher v. First Mutual Corp.*, No. 05-0115, 2007 WL 2972561, at *3 n.3 (E.D. Pa. Oct. 9, 2007); *In re Community Bank of Northern Virginia*, 467 F. Supp. 2d 466, 478 (W.D. Pa. 2006), *disapproved in later appeal on procedural grounds,* 622 F.3d 275 (3d Cir. 2010).  Indeed, equitable tolling "is an extraordinary remedy which

should be extended only sparingly." *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005).

Furthermore, each element of equitable tolling must be pled with particularity to satisfy Rule 9(b)'s heightened pleading requirements. *In re Community Bank*, 467 F. Supp. 2d at 478; *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 314-16 (D.N.J. 2004) (noting in particular that plaintiff's due diligence in inquiry to discover wrongdoing must be pled with particularity).

### 1.    Plaintiffs Fail To Allege That SunTrust Actively Misled Them.

To satisfy the first element, that Defendants actively misled Plaintiffs, "'there must be actual concealment,-i.e., some trick or contrivance intended to exclude suspicion and prevent [inquiry].'" *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 788 (3d Cir. 2001) (quoting *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994)).  The plaintiff must allege, and later prove, that the defendant took affirmative steps to conceal its wrong. Those affirmative steps must be distinct from the wrong itself. *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204-205 (3d Cir. 2006); *Keen v. Lockheed Martin Corp.*, 486 F.Supp.2d 481, 493 (E.D. Pa. 2007); *see also In re Community Bank* 467 F.Supp.2d at 479 ("[T]he fraudulent act(s) that provide the factual predicate for the claim … cannot also satisfy the factual predicate justifying equitable tolling. To so hold would render the statute of limitations meaningless for fraud by its nature requires a deceit thus, to state a case for fraud would always suffice to state a case for fraudulent concealment."); *Heintz Corp. v. Electro Methods, Inc.*, No. 94-6916, 1995 WL 405721, at *5 (E.D. Pa. June 20, 1995) ("the adversary must commit some affirmative independent act of concealment upon which the plaintiffs justifiably rely in order to toll the statute") (citation omitted); *Gurfein v.*

- 13 -

*Sovereign Group*, 826 F.Supp. 890, 919 (E.D. Pa. 1993) ("There must be an affirmative and independent act of concealment that would divert or mislead the plaintiff from discovering the injury."); *Browning v. Levy*, 283 F.3d 761, 770 (6th Cir. 2002) ("affirmative concealment must be shown; mere silence or unwillingness to divulge wrongful activities is not sufficient").

Further, mere inaction or silence will not suffice as "actively misleading" conduct except when there is an affirmative duty to disclose because of a fiduciary relationship between plaintiff and defendant. *Mest v. Cabot Corp.*, 449 F.3d 502, 517 (3d Cir. 2006); *Community Bank of Northern Virginia*, 467 F.Supp.2d at 479. Even a fiduciary is not required to confess error in order to keep the limitations clock ticking. *See Ranke*, 436 F.3d at 205

Plaintiffs' Complaint does not allege facts sufficient to establish the first element of equitable tolling. Instead, Plaintiffs merely allege that SunTrust Mortgage used its standard closing documents, including a form Mortgage and the Disclosure, to mislead Plaintiffs about the relationship between SunTrust Mortgage and Twin Rivers and to represent that the payments received by Twin Rivers from mortgage insurers were for services rendered, and not kickbacks or unearned fees. Compl. ¶ 116. Plaintiffs restate this allegation more broadly as well, alleging that "by funneling kickbacks through Twin Rivers and representing that such payments were for services actually performed, rather than referral fees, SunTrust acted to conceal and prevent Plaintiffs from discovering the underlying basis for this action." *Id.* ¶ 121.

Plaintiffs assert that SunTrust Mortgage actively misled them through the language contained in the Disclosure. Plaintiffs argue that, even though SunTrust

Mortgage disclosed the fact that Plaintiffs' mortgage insurance arrangement might include captive reinsurance through a SunTrust affiliate, it failed to specifically identify Twins Rivers and disclose the nature of the relationship between SunTrust Mortgage and Twin Rivers, as purportedly required by RESPA section 2604(c).  Compl. ¶ 117. Plaintiffs further argue that SunTrust intentionally designed its forms in order to conceal information that would put them on notice of the underlying basis for claims against SunTrust, by failing to disclose that the captive reinsurance arrangements were lawful only if they involved adequate assumption of the risk by Twin Rivers.  *Id.* ¶ 118.  In other words, Plaintiffs allege that Defendants actively misled them by failing to inform them that SunTrust Mortgage's captive reinsurance arrangements violated RESPA.

   The bottom line is that Plaintiffs' only factual allegation that any SunTrust entity actively misled the Plaintiffs is that SunTrust Mortgage failed to disclose that its captive reinsurance arrangements were unlawful and violated RESPA.  More specifically, Plaintiffs fail to allege anything more than that SunTrust Mortgage failed to disclose to Plaintiffs that there was inadequate assumption of the risk by Twin Rivers, and that the captive reinsurance arrangement was a kickback scheme.  Under the applicable law, this is plainly insufficient to meet the first element of the standard for equitable tolling, since those acts which form the factual predicate of Plaintiffs' claim cannot also supply the necessary independent act of concealment to give rise to equitable tolling/fraudulent concealment.  *See Mest*, 449 F.3d at 517; *Community Bank of Northern Virginia*, 467 F.Supp.2d at 479*; Gurfein*, 826 F.Supp. at 919.

   Even under Rule 8(a), a plaintiff's obligation to state the "grounds" of his entitlement to relief "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. For this reason, Plaintiffs' repeated averment of the unsupported conclusion that Defendants engaged in affirmative acts to mislead does not suffice. *See Laychock v. Wells Fargo Home Mortg.*, No. 07-4478, 2008 WL 2890962, *7 (E.D. Pa. July 23, 2008) (finding insufficient "conclusory allegations of conspiracy and deceptive practices" to invoke equitable tolling to save a time-barred RESPA claim); *see also Griglak v. CTX Mortg. Co., LLC*, No. 09-5247, 2010 WL 1424023, *4 (D.N.J. Apr. 8, 2010) (holding that the plaintiffs failed to allege sufficient facts to support equitable tolling where they only argued that they were not aware of the illicit nature of their mortgage loans until too late); *Billero v. Wachovia Mortg., FSB*, No. 10-1744, 2010 WL 5168949 (D.N.J. Dec. 14, 2010) (holding that alleging active misleading by defendants is alone insufficient when plaintiffs reviewed and signed the loan documents and disclosures that form the basis of their claim).

The Court in *In re Community Bank of Northern Virginia*, dealt with allegations similar to those in the present case.  In that case,  the objectors to a class action settlement filed a complaint under the federal Truth-in-Lending Act ("TILA") contending that certain misrepresentations in their loan documents constituted violations of TILA.  As the complaint was filed outside of the statute of limitations, the plaintiffs argued that equitable tolling applied because the "defendants did not tell them the representations contained in the loan document[s] were inaccurate."  The Court rejected this argument holding that equitable tolling did not apply in words equally applicable to the present case:

> Restated, the fraudulent act(s) that provide the factual
> predicate for the claim, i.e. inaccurate loan documents,

cannot also satisfy the factual predicate justifying equitable tolling.   To so hold would render the statute of limitations meaningless for fraud by its nature requires a deceit[;] thus, to state a case for fraud would always suffice to state a case for fraudulent concealment.   Rather, the Objectors must show the defendants took some active steps to mislead the borrowers with the result the borrowers were lulled into sitting on their right of redress.  *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1391, footnote 10 (3d Cir.1994), *affirmed by* 96 F.3d 1434 (3d Cir. 1996).  Restated, fraudulent concealment requires some additional affirmative fraudulent act to perpetuate the concealment.  Mere inaction or silence is not sufficient.  *Davenport v. A.C. Davenport & Son Co.,* 903 F.2d 1139, 1142 (7th Cir. 1990), *overruled on other grounds Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir. 1990);  *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1416 (9th Cir. 1987);  *Roney and Co. v. Kassab,* 981 F.2d 894 (6th Cir. 1992)

467 F. Supp. 2d at 479

Plaintiffs otherwise rely solely on inaction and silence: "SunTrust did not disclose to borrowers that its captive reinsurance arrangements were lawful only if they involved adequate assumption of risk by Twin Rivers." Compl. ¶ 118.  This is insufficient.  "For a RESPA claim to warrant equitable tolling, mere silence or nondisclosure is not enough to trigger estoppel[;] the adversary must commit some affirmative independent act of concealment upon which the plaintiffs justifiably rely in order to toll the statute."  *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 516 (E.D. Pa. 2009) (citations and internal quotations omitted).

Furthermore, in this Circuit, silence cannot constitute fraudulent concealment absent a fiduciary relationship between plaintiff and defendant.  *Mest*, 449 F.3d at 517.  Nowhere in their Complaint do Plaintiffs allege any such relationship, nor could they.  It is well-settled under Pennsylvania law that, under ordinary circumstances, a lender and a borrower have no special or fiduciary relationship.  *See, e.g., Gonzalez v.*

- 17 -

*Old Kent Mort. Co.*, No. 99-5959, 2000 WL 1469313, at *6 (E.D. Pa. Sept. 21, 2000);

*Rousseau v. City of Phila.*, 514 A.2d 649, 652 (Pa. Cmwlth. 1986).

Ultimately, Plaintiffs aver no fraudulent concealment except that SunTrust

did not confess any RESPA violation.  Because the underlying wrong cannot double for

the fraudulent concealment required to toll the statute, Plaintiffs have failed to aver

sufficient facts to satisfy the first element of the equitable tolling standard.

### 2.     Plaintiffs Do Not Allege That Defendants' Active Misleading Led To Their Inability To Recognize Their Cause Of Action.

Plaintiffs' Complaint also fails to allege facts establishing a causal link

between SunTrust's purported fraudulent concealment and Plaintiffs' inability to

recognize their cause of action during the limitations period.  Instead, Plaintiffs advance

an argument that "[t]he average homebuyer is not an insurance expert," and that

Plaintiffs' relative lack of sophistication regarding insurance prevented them from

discovering any violation of RESPA without "specialized knowledge and/or assistance of

counsel." Compl. ¶¶118, 116.

A plaintiff's own lack of knowledge and expertise does not toll the statute

of limitations.  12 U.S.C. § 2614 sets a single one-year limitations period for everyone,

whether vigilant or not. To toll that limitations period, Plaintiffs must allege that they

actually were misled … into thinking that they did not have a cause of action. *Forbes v.

Eagleson,* 228 F.3d 471, 487 (3d Cir. 2000).  Plaintiffs do not claim that they were misled

into thinking there was no cause of action; accordingly, there is no causal link.

### 3.     Plaintiffs Do Not Allege Reasonable Diligence.

The statute of limitations will only be tolled until the wrongdoing is

actually discovered, or might have been discovered after a "reasonably diligent inquiry."

DMEAST #13630976 v5

*Prudential Ins. Co. v. U.S. Gypsum Co.*, 828 F. Supp. 287, 301-02 (D.N.J. 1993); *see also Cetel*, 460 F.3d at 508-09 (equitable tolling did not apply where plaintiffs did not exercise reasonable "due diligence" to discover the alleged wrong).

Here, there can be no question Plaintiffs have failed to allege any sort of reasonably diligent inquiry. First, Plaintiffs' allegations fail to satisfy this element because they do not allege <u>any</u> effort that they made to discover their claim. Instead, Plaintiffs claim that they "exercised due diligence by participating fully in their loan transactions." Compl. ¶ 120. Participating in the loan transaction itself cannot establish diligence as such a conclusion would subject every loan transaction to equitable tolling and would, in effect, read the statue of limitations out of both TILA and RESPA.

Plaintiffs were presented with the Disclosures at closing which warned them of the possibility that their loans would include a captive reinsurance arrangement, and even allowed them to opt out of that arrangement, yet they did nothing to investigate. Disclosures, Exhibits 5-8. Plaintiffs do not allege that they investigated the meaning of "captive reinsurance" or why they were being given the option to opt out of any such arrangement. Nonetheless, Plaintiffs all signed their Disclosures. *Id.*

In the Third Circuit the standard for "reasonable due diligence" is that a plaintiff is put on notice of fraud when he or she knew or should have known of the possibility of fraud. *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 251 (3d Cir. 2001). In *Mathews*, the Court quoted with approval the District Court's formulation of when a plaintiff has been put on "inquiry notice:" "(1) whether the plaintiffs knew or should have known of the possibility of fraud ('storm warnings') and, once that possibility arose, (2) whether plaintiffs exercised due diligence to determine the origin

and extent of the fraud." *Mathews* at 251-52.  The concept of "storm warnings" is applicable here, particularly since Plaintiffs append and discuss copious publicly-available information relating to their purported claims.

There was a sufficient number of "storm warnings" present to alert Plaintiffs to their claims. Plaintiffs point to an advisory letter issued by HUD in 1997, which addressed the very issue in controversy here: whether captive reinsurance arrangements are permissible under RESPA.  Compl. ¶¶ 52-56.  The letter concluded that captive reinsurance arrangements are permissible under RESPA only "if the payments to the affiliated reinsurer: (1) are for reinsurance services actually furnished or for services performed and (2) are bona fide compensation that does not exceed the value of such services." Compl. ¶ 53 (quoting Letter from Nicolas Retsinas, Ass't Secretary for Housing – Federal Housing Commissioner, United States Department of Housing and Urban Development to Sandor Samuels, General Counsel, Countrywide Funding Corporation (Aug. 6, 1997), attached as Exhibit B to Plaintiffs' Complaint).  This letter has been publicly available for fourteen years. As Plaintiffs also mention, state and federal regulators have taken action against "similar" captive reinsurance arrangements in the title insurance industry, Compl. ¶ 56, and the National Association of Insurance Commissioners has looked into the issue.  Id. ¶ 58.

Additionally, there were several lawsuits filed against other lenders before or during the limitations period alleging that the defendants' captive reinsurance arrangements resulted in the payment of kickbacks in violation of RESPA.  *See, e.g.*, *Alston v. Countrywide Financial Corp.*, No. 07-3508, 2008 WL 4444243 (E.D. Pa. Sep. 29, 2008) (filed August 23, 2007) *rev'd*, 585 F.3d 753 (3d Cir. 2009); *Alexander v.*

*Washington Mut., Inc.*, No. 07-4426, 2008 WL 3285845 (E.D. Pa. Aug. 04, 2008) (filed

Oct. 22, 2007); *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 2007 WL 4249854 (N.D. Cal.

2007) (filed Mar. 7, 2007).[6]

   Then, there were the documents Plaintiffs had in their possession.

Plaintiffs' Mortgages disclosed the possibility that a SunTrust affiliate could reinsure

Plaintiffs' private mortgage insurance and receive a share of the premiums.  *See* Exhibits

1-4.   Likewise, the Disclosure signed by each Plaintiff informed them that SunTrust or

an affiliate may enter into reinsurance arrangements with private mortgage insurance

companies.  *See* Exhibits 5-8.

   By Plaintiffs' own reckoning, there was a sufficient amount of information

available for a diligent mortgagor to engage in a reasonably diligent inquiry and discover

the alleged RESPA claim.  *See Billero*, 2010 WL 5168949 at *10.  In *Billero*, the Court

refused to find that the Plaintiffs were actively misled by their mortgage lender with

respect to either the terms and conditions of their loan under TILA or under RESPA,

because they had been provided with the opportunity to review and sign their loan

documents – the same documents upon which they based their claims.  *Id.*  This is

equally true here, where the Mortgages and the Disclosures specifically explained the

captive reinsurance arrangement and the Disclosure provided the Plaintiffs with the

opportunity to opt out of such an arrangement.  *See also Taggart v. Norwest Mortgage,

Inc.*, No. 09-1281, 2010 WL 114946 (E.D. Pa. Jan. 11, 2010) (holding that because the

fees that formed the basis of plaintiff's complaint were disclosed at the time of the real

---

[6]   All three of the above-listed cases – *Alston*, *Alexander* and *Kay* – were filed by
members of Plaintiffs' counsel team.

estate closing on the HUD-1 form signed by the plaintiff, there could be no equitable tolling of plaintiff's expired RESPA claim).

Further, Plaintiffs' repeated conclusion that they lacked knowledge or expertise sufficient to discover the claim adds nothing. *See Compl.* ¶¶ 113, 115, 118. Actual knowledge of the claim ends any limitations tolling, but so does knowledge that a plaintiff would have gained had he or she been diligent in discovering the claim. As shown above, Plaintiffs had copious information at their disposal regarding captive reinsurance arrangements at the time of the closing of their real estate transactions and during the applicable limitations period. Accordingly, their failure to do their due diligence should not be rewarded by tolling the limitations period.

In short, Plaintiffs have failed to allege an affirmative act of concealment on the part of SunTrust; a causal link; or reasonable diligence on their part. Therefore, Plaintiff's RESPA claim is time barred and should be dismissed.

### B.   Plaintiffs' Unjust Enrichment Claim Fails As A Matter Of Law.

As argued above, Plaintiffs' RESPA claim fails under the statute of limitations. Their unjust enrichment claim is merely an attempt to make an end run around that fact. For that reason alone, the unjust enrichment claim should be dismissed. *See, e.g., Garczynski*, 656 F. Supp.2d at 515-16 (plaintiff not permitted to engage in end run around RESPA statute of limitations by pleading it as basis for state law claim); *Morilus v. Countrywide Home Loans, Inc.*, 2008 WL 5377627, at *13 (E.D. Pa. Dec. 22, 2008) (same).

In any event, Plaintiffs also fail to state an unjust enrichment claim. To state a claim for unjust enrichment, Plaintiffs must allege that they conferred a benefit on SunTrust, that SunTrust appreciated the benefit under the circumstances and that

- 22 -

SunTrust unjustly accepted and retained the benefit without payment for value.  *Inoff v. Craftex Mills, Inc.*, No. 06-3675, 2007 WL 4355385, at *13 (E.D. Pa. Dec. 11, 2007); *BurgettstownSmith Twp. Joint Sewage Auth. v. Langeloth Townsite Co.,* 403 Pa. Super. 84, 588 A.2d 43, 45 (1991).  Furthermore, the Supreme Court of Pennsylvania has held that "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh,* 776 F.2d 1174 (3d Cir. 1985) (quoting *Schott v. Westinghouse Elec. Corp.,* 436 Pa. 279, 259 A.2d 443, 448 (1969)).  Thus, this Court has repeatedly held that dismissal of an unjust enrichment claim is appropriate upon a motion to dismiss when the relationship between the parties is founded on a written instrument, as here. *See, e.g, Estate of Harold,* 406 F. Supp.2d at 578-79; *Constar, Inc. v. Nat'l Distrib. Ctrs., Inc.,* 101 F. Supp.2d 319, 324 (E.D. Pa. 2000); *Promark Realty Group, Inc. v. B & W Assocs.,* Civ. A. No. 02-1089, 2002 WL 862566, *4, 2002 U.S. Dist. LEXIS 8016 at *10 (E.D. Pa. 2002).

Plaintiffs cannot possibly satisfy the elements of this cause of action as the relationship between SunTrust and Plaintiffs is governed exclusively by the terms of their Notes and Mortgages.  See 33 Pa. S. § 1 (interest in land, including mortgage and loan terms, must be in writing to be enforceable); *Eastgate Enters., Inc. v. Bank & Trust Co. of Old York Rd.,* 236 Pa. Super. 503, 345 A.2d 279, 281 (1975) (mortgages, like other interests in land, fall under the statute of frauds).

Accordingly, Plaintiffs have not and cannot allege that SunTrust was unjustly enriched.

DMEAST #13630976 v5

**C.**     **Plaintiffs Have Not Alleged Facts Sufficient To Pierce The Corporate Veil And Their Claims Against SunTrust Banks, Inc. And SunTrust Bank Should Be Dismissed For That Additional Reason.**

SunTrust Banks, Inc. is the corporate parent of SunTrust Bank.  Compl. ¶ 16; *see also* Fed. R. Civ. P. 7.1 Corporate Disclosure Statement, Docket No. 22, filed Apr. 14, 2001.  SunTrust Mortgage, Inc. and Twin Rivers Insurance Company are wholly-owned subsidiaries of SunTrust Bank.  Compl. ¶¶ 17-18.   The Complaint recognizes this corporate structure.  However, the Complaint does <u>not</u> allege any involvement in Plaintiffs' Mortgages by SunTrust Banks, Inc. or SunTrust Bank.  Nor does it allege that Plaintiffs paid any portion of their PMI to either SunTrust Banks, Inc. or SunTrust Bank.  Indeed, while the Complaint refers to SunTrust Banks, Inc., SunTrust Bank and SunTrust Mortgage, Inc. as "SunTrust" and the SunTrust entities collectively with Twin Rivers as "Defendants" loosely throughout, at no point does it identify any action taken by SunTrust Banks, Inc. or SunTrust Bank.  *See, e.g., Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp.2d 1092, 1101 (E.D. Cal. 2010) (finding such collective pleading insufficient and explaining: "Defendants should not be forced to guess how they each violated RESPA.").

Thus, the Complaint wholly fails to allege any facts necessary to warrant this Court's piercing of the corporate veil to hold SunTrust Banks, Inc. or SunTrust Bank liable for the actions of its subsidiaries.  As the Third Circuit has explained:  "The corporate form was created to allow shareholders to invest without incurring personal liability for the acts of the corporation. These principles are equally applicable when the shareholder is, in fact, another corporation, and hence, mere ownership of a subsidiary does not justify the imposition of liability on the parent."  *Pearson v. Component Technology Corp.*, 247 F.3d 471, 484 (3d Cir. 2001), *cert. denied*, 534 U.S. 950 (2001).

- 24 -

Under Pennsylvania law, factors to be considered in piercing the corporate veil include: "(1) gross undercapitalization, (2) failure to observe corporate formalities, (3) substantial mingling of corporate and personal affairs, and (4) using the corporate form to perpetrate a fraud." *Siematic Mobelwerke GmbH & Co. Kg v. Siematic*, 643 F.Supp.2d 675 (E.D. Pa. 2009) (citing *Nowicki v. United Timber Corp.*, No. 99-257, 2000 WL 1239966, at * 5 (E.D.Pa. Aug. 31, 2000); *Lumax Indus., Inc. v. Aultman*, 543 Pa. 38, 669 A.2d 893, 895 (1995); *Village at Camelback v. Carr*, 371 Pa. Super. 452, 538 A.2d 528, 533 (1988)).  Here, Plaintiff makes no allegations to support any theory of veil-piercing.  Indeed, the Complaint simply refers to "Defendants" throughout and fails to make any distinction between the SunTrust subsidiaries and their parent corporations, let alone allege how SunTrust Mortgage, Inc. and Twin Rivers were somehow created to shield SunTrust Banks, Inc. or SunTrust Bank from liability.  *See* Compl., passim.  Such allegations are plainly insufficient, and warrant dismissal of SunTrust Banks, Inc. and SunTrust Bank from this action.  *See, e.g.*, *Jack LaLanne Fitness Centers, Inc. v. Jimlar, Inc.*, 884 F. Supp. 162, 165 (D.N.J. 1995) (dismissing corporate veil claim where party simply alleged domination); *Fort Washington Resources, Inc. v. Tannen*, 153 F.R.D. 565 (E.D. Pa. 1994) (dismissing corporate veil claim where complaint "fails to allege any sort of fraud or injustice necessary to state a claim for piercing the corporate veil").

Plaintiffs baldly allege in paragraph 19 of their Complaint that "each Defendant was and is a recipient of the unlawful kickbacks and unearned fees described [in the Complaint]."  Compl ¶ 19.  However, the Mortgages and other documentation make clear that SunTrust Mortgage was the lending party, and, aside from this conclusory language implicating SunTrust Banks, Inc. and SunTrust Bank, Plaintiffs do

not allege any other facts that would suggest that it is appropriate here to pierce the corporate veil.  See, *e.g., Haehl v. Washington Mut. Bank, F.A.*, 277 F.Supp.2d 933, 935 n.2 (S.D. Ind. 2003) (dismissing the lender's parent company where loan documents attached to the Complaint showed that the lending entity was the subsidiary and no circumstances were alleged that would justify piercing the corporate veil); *Conomos v. Chase Manhattan Corp.,* 1998 WL 118154, *3 (S.D.N.Y. 1998) (dismissing RESPA claims against lender's parent corporation where plaintiff conflated the parent company with the subsidiary and merely pleaded that both defendants violated RESPA by paying kickbacks to mortgage brokers).

Further, Plaintiffs have alleged only that "on information and belief," SunTrust Banks, Inc. and SunTrust Bank were recipients of kickbacks and unearned fees. Compl. ¶ 19.  This conclusory allegation – a formulaic recitation of one of the factors that would weigh in favor of piercing the corporate veil – is insufficient under the *Twombly* pleading standard. *See Partners Coffee Co., LLC v. Oceana Services and Products Co.*, 700 F.Supp.2d 720, 737 (W.D. Pa. 2010) (dismissing a counterclaim where the allegations therein consisted of nothing more than a list of the factors militating in favor of piercing the corporate veil based on "information and belief") (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (the Court is "not compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.")).

As a result, the Motion to Dismiss should be granted in favor of SunTrust Banks, Inc. and SunTrust Bank on all counts, dismissing them from the case.

DMEAST #13630976 v5

**D.      Plaintiffs Have Failed To Join A Necessary Party.**

Federal Rule of Civil Procedure 12(b)(7) provides for the dismissal of an action for "failure to join a party under Rule 19." The dismissal of this action is also required under Rule 12(b)(7).

As the Mortgage attached hereto as Exhibit 1 makes clear, it cannot be disputed that Plaintiff Christopher Thurmond is not the only obligor on his SunTrust Mortgage loan. Consequently, he was not the only obligor on that particular loan whose mortgage insurance was reinsured by Twin Rivers. Rather, Rose Simpson Thurmond was the co-obligor on Plaintiff's loan. However, she has not been named as a plaintiff in this action.

Under Rule 19(a) of the Federal Rules of Civil Procedure, the joinder of parties is compulsory or "necessary" if their joinder is "feasible." Specifically, the Rule states in material part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

Under Rule 19(a)(1), the Court should ask whether complete relief may be accorded to those persons named as parties to the action in the absence of any unjoined parties. *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996). Under

- 27 -

Rule 19(a)(2)(i), the Court must decide whether determination of the rights of those persons named as parties to the action would impair or impede an absent party's ability to protect its interest in the subject matter of the litigation.  Fed. R. Civ. P. 19(a)(2)(i); *see also Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 409 (3d Cir. 1999).  Finally, under Rule 19(a)(2)(ii), the Court must decide whether continuation of the action would expose named parties to the "substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

The law is well settled that where only one of several parties with a joint claim brings suit, the other potential claimants must be joined.  *See* 3A Moore's Federal Practice, ¶ 19.11 (3d ed. 1979) (collecting cases); *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 547 (2d Cir.) (all parties to contract whose validity was challenged should be joined), *cert. denied*, 502 U.S. 818 (1991); *Global Discount Travel Servs. v. Trans World Airlines, Inc.*, No. 96-2030, 1997 WL 137438, at *6 (S.D.N.Y. March 25, 1997) (all contracting parties should be joined because of "the public's interest in 'avoiding repeated lawsuits on the same essential subject matter'"); *FDIC v. Home Savings Bank*, No. 90-2037, 1993 WL 41818 at *6 (E.D.N.Y. Feb. 9, 1993) (all parties to contract "are generally necessary parties to any action based upon that contract, since there is otherwise a risk of inconsistent obligations"); *Travelers Indemnity Co. v. Household Int'l Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991) ("a contracting party is the paradigm of an indispensable party").

Moreover, joinder of joint claimants is required to avoid the potential harassment and inefficiency of multiple suits being leveled against the defendant.  *See*, *e.g.*, *Hoheb v. Muriel*, 753 F.2d 24, 27 (3d Cir. 1985); *Bry-Man's, Inc. v. State*, 312 F.2d

- 28 -

585, 587 (5th Cir. 1963); *Spiro v. Parker Bros.*, No. 91-7759, 1992 WL 197405, at *2

(S.D.N.Y. Aug. 4, 1992) ("Defendant has an interest in avoiding multiple and repetitive

litigation that the court must weigh in the balance.").  A defendant has the right "to

demand that both obligors be joined in one proceeding in order that its rights, as to all

obligors, can be decided once and for all."  *In re Mosely*, 85 B.R. 942, 949 (Bankr. E.D.

Pa. 1988); *see Weaver v. Mid-Century Ins. Co.*, 690 F. Supp. 845, 846 (E.D. Mo. 1988)

(co-obligor on promissory note a necessary party-plaintiff).

  The decision of the Court in *Moll v. U.S. Life Title Ins. Co. of N.Y.*, 654 F.

Supp. 1012 (S.D.N.Y. 1987), is both on-point and compelling.  In *Moll*, the plaintiff

brought a putative class action contending that defendants violated section 2607 of

RESPA based upon the defendant title insurer's payment of a rebate of a portion of the

title insurance fee to the plaintiff's attorneys.  The plaintiff, however, had purchased the

subject property and entered into the mortgage loan agreement with her husband as a co-

obligor.  The plaintiff's husband was not a party to the pending action and the defendants

sought his joinder under Rule 19.  The District Court agreed holding that the plaintiff's

husband had to be joined as a plaintiff:

> In the instant action, Mr. Moll was the joint applicant for
> the title insurance at issue and the co-owner of the house
> covered by the insurance. Moll Complaint, ¶¶ 35-37 and
> Ex. A and B annexed thereto. Defendant notes that Mr.
> Moll's interest in this litigation is identical to that of his
> wife. Thus, it appears that he should be joined to avoid the
> possibility of double or inconsistent judgments and to
> provide complete relief among all parties to the contract

654 F. Supp. at 1018 (citations omitted).  The Court also rejected the plaintiff's argument

that it was unnecessary to join her husband as he was a member of the putative class and

was unlikely to bring his own lawsuit:  "The Court must reject Mrs. Moll's first argument

against joinder-namely, that Mr. Moll is a member of the proposed class-because no class has yet been certified. Second, contrary to Mrs. Moll's assertion, it is conceivable that her husband would commence a new lawsuit, if her suit fails or is discontinued at any time prior to a full trial. . . . Mr. Moll undeniably has an interest in this action and his wife offers no reason why he cannot be joined as a party."  Id. at 1018-19.  *Accord Caminero v. Wells Fargo*, No. 07-800, 2007 WL 2985054, at *2 (E.D. Va. Oct. 10, 2007) (in RESPA action, requiring joinder of the plaintiff's co-obligor because "Defendant at risk of double or inconsistent obligations").

In the present case, both Plaintiff Thurmond and his co-obligor Simpson Thurmond are necessary parties.  Both executed the loan documents and paid the mortgage insurance premiums that are at the heart of this case.  In the event that wrongful conduct is established, both will have the same right to recover damages.  The twin evils for which Rule 19 was designed—to prevent multiple liabilities and to prevent unfair harassment from multiple litigation—are a very real threat as a result of Plaintiffs' failure to join Simpson Thurmond as a plaintiff.  For example, if Defendants prevail on Plaintiff's claim, Simpson Thurmond may decide nevertheless to sue Defendants in her own name to get a second bite at the apple.   Conversely, if Plaintiffs prevail, Simpson Thurmond may then sue in her own name so that she too can recover on account of the same transaction.  Whether or not Defendants are ever found liable to Plaintiffs or Simpson Thurmond, the damage will be done, because Defendants would have been subject to multiple lawsuits.  Rule 19 is designed to avoid precisely that result.

Accordingly, Plaintiffs must add Simpson Thurmond as a party plaintiff or this action should be dismissed as to Christopher Thurmond.

## V.     CONCLUSION

For the above reasons, Defendants respectfully request that this Court dismiss the RESPA claim against all defendants and dismiss the Complaint in its entirety against SunTrust Banks, Inc. and SunTrust Bank.  Defendants also respectfully request that Plaintiffs be ordered to join Rose Simpson Thurmond as a plaintiff.

Respectfully submitted,

Date: May 2, 2011

/s/ Maura E. McKenna
Martin C, Bryce, Jr., Esq. (PA 59409)
bryce@ballardspahr.com
Maura E. McKenna, Esq. (PA 202940)
mckennam@ballardspahr.com
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103-7599
(215) 864-8238 (Telephone)
(215) 864-9511 (Fax)

Attorney for Defendants SunTrust Banks,
Inc., SunTrust Bank, SunTrust Mortgage,
Inc. and Twin Rivers Insurance Company

- 31 -

DMEAST #13630976 v5